UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x      Case No. 11-cv-09625(ER)(GAY)
                                                             **ORAL ARGUMENT REQUESTED**
Hermelina De La Paz, on behalf of herself
and all others similarly situated,


                            Plaintiff


              -against-


Rubin & Rothman, LLC and Keith Rothman,
Esq.,


                            Defendants

------------------------------------------------------x




                    DEFENDANTS' MEMORANDUM OF LAW
                  IN OPPOSITION TO PLAINTIFF'S MOTION
                     FOR ATTORNEYS FEES AND COSTS


                                          ROBERT L. ARLEO, ESQ.
                                          Attorney for the Defendants
                                          380 Lexington Avenue, 17th Fl.
                                          New York, New York  10168
                                          (212) 551-1115

## Table of Contents

**Page**

I.      PRELIMINARY STATEMENT…………………………………...        1

II.     ARGUMENT………………………………………………………..        3


A.     THE PLAINTIFF'S COUNSELS
        INFLATED THEIR FEES……………………………………….        3


B.     THE COURT SHOULD
        DENY FEES ENTIRELY…………………………………………        7


C.     IF THE COURT DOES NOT DENY
        FEES ENTIRELY THEN THE FEES
        SHOULD BE DRASTICALLY REDUCED………………………….        30


III.    CONCLUSION…………………………………………………………        35

TABLE OF CITATIONS

CASE                                                                      Page No.

*Am. Pipe & Construct. Co.*,
414 U.S. 538, 551 (1974)……………………………………………………… 26

*Barile v. Allied Interstate, Inc.*,
2013 U.S. Dist. LEXIS 32483 (S.D.N.Y.)…………………………………………… 4

*Barfield v. N.Y. City Health & Hospital Corp.*,
537 F. 3d 132 (2d Cir. 2008)…………………………………………………… 31

*Berrios v. Sprint Corp.*,
1998 U.S. Dist. LEXIS 6579 (E.D.N.Y.)……………………………………….......... 20

*Boggs v. Alto Trailer Sales, Inc.*,
511 F.2d 114, 118 (5th Cir. 1975)…………………………………………………… 14

*Brown v. Stackler*,
612 F.2d 1057, 1059 (7th Cir. 1980)…………………………………………………… 28

*Budget Rent-A-Car Sys. v. Consol. Equity, LLC*,
428 F.3d 717, 718 (7th Cir. 2005)…………………………………………………… 8

*Chen v Chen Qualified Settlement Fund*,
552 F.3d 218, 225 (2d Cir. 2009)………………………………………………… 8

*Clarke v. Frank*,
960 F.2d 1146, 1153 (2d Cir. 1992)…………………………………………………… 31

*Coulter v. State of Tennessee*,
805 F.3d 146, 150 (6th Cir. 1986)…………………………………………………… 10

*Crown v. Cork & Seal Co. v. Parker*,
462 U.S. 345, 103 Sup. Ct. 2392 (1983)………………………………………… 26

*Daily v. Societe General*,
915 F. Supp. 1315, 1328 (S.D.N.Y. 1996)………………………………………….. 34

*Defilippo v.* Morizio,
759 F.2d 231, 235 (2d Cir. 1985)…………………………………………………… 3

*Democratic Party of Wash. State v. Reed*,
388 F.3d 1281 (9th Cir. 2004)…………………………………………………….. 35

*E.S. v. Katonah- Lewisboro School Dist.*,
796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011)……………………………………………… 34

*Fair Hous. Council v. Landow*,
999 F.2d 92, 93 (4th Cir. 1993)……………………………………………………… 7

*Farrar v. Hobby*,
506 U.S. 103, 119, 113 S.Ct. 566 (1992)……………………………………………… 31

*Finkel v. Omega Common Servs.*,
543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008)…………………………………………… 33

*First State Ins. Group v. Nationwide Mut. Inc. Co.*,
402 F.3d 43 (1st Cir. 2005)…………………………………………………………... 8

*Foti v. NCO Financial Systems, Inc.*,
2008 U.S. Dist. LEXIS 16511 (S.D.N.Y.)……………………………………………... 32

*Gingras v. Lloyd*,
585 F. Supp. 684 (D. Conn. 1983)…………………………………………………….. 34

*Goser v. Allied Interstate, LLC*,
2013 U.S. Dist. LEXIS 78097 (S.D.N.Y)……………………………………………… 5

*Goss v. Killian Oaks House of Learning*,
248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003)……………………………………….. 28

*Gierlinger v. Gleason*,
160 F.3d 858, 876 (2d Cir. 1998)……………………………………………………… 30

*Gradisher v. Check Enforcement Unit, Inc.*,
 209 F.R.D. 92 (W.D. Mich. 2002)……………………………………………………. 21

*Guevarra v. Progressive Fin. Serv.*,
497 F. Supp. 2d 1090 (N.D. Ca. 2007)………………………………………………… 24

*Hart v. Bourgue*,
798 F.2d 519, 523 (1st Cir. 1986)…………………………………………………... 35

*Hecht v. United Collection Bureau*,
691 F.3d 218, 223-24 (2d Cir. 2012)…………………………………………………. 32

*Hensley v. Eckerhart*,
461 U.S. 424, 434 (1983)……………………………………………..…………………… 33

*Husain v. Springer*,
2013 U.S. Dist. LEXIS 37134 (E.D.N.Y.)…………………………………………… 34

*In re AMF Bowling Sec. Litig.*,
334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004)…………………………………….. 12

*Jim Beam Brands Co. v. Tequila Cuervo La Rojena S.A. DE C.V.*,
Index No. (Sup. Ct. N.Y. County 2011)…………………………………………… 18

*Kalish v. Karp & Kalamotousakis, L.L.P.*,
246 F.R.D. 461 (S.D.N.Y 2007)…………………………………………………… 20

*Kassim v. City of Schenectady*,
415 F.3d 246, 254 (2d Cir. 2005)……………………………………………….. 31

*Kirsch v. Fleet Street, Ltd.*,
148 F.3d 149, 173 (2d Cir. 1998)……………………………………………….. 30

*Ky. Rest. Concepts, Inc. v. Louisville*,
117. Fed. App'x 415, 419 (6th Cir. 2004)…………………………………………… 35

*Labarbera v. J.E.T. Res. Inc.*,
396 F. Supp. 2d 346, 351 (E.D.N.Y. 2005)…………………………………….. 3

*Labatte-D'Alauro v. GC Serv. Ltd. P'shp*,
168 F.R.D. 451 (E.D.N.Y. 1996)…………………………………………………. 20

*Laster v. Cole*,
2000 U.S. Dist. LEXIS 8672 (E.D.N.Y.)……………………………………….. 3

*Lewis v. Kendrick*,
944 F.2d 949, 958 (1st Cir. 1991)……………………………………………….. 29

*Levy v. Donald E. Powell*,
2005 U.S. Dist. LEXIS 42180 (E.D.N.Y.)………………………………………. 34

*Leyse v. Corporate Collection Servs., Inc.*,
2006 U.S. Dist. LEXIS 67719 (S.D.N.Y.)…………..…………………………… 21

*Lunday v. City of Albany*,
42 F.3d 131 (2d Cir. 1994)……………………………………………………… 3

*Lyles v. Rosenfeld Attorney Network*,
2000 U.S. Dist. LEXIS 8543 (D. Miss.)……………………………………….. 21

*Macarz v Transworld Systems, Inc.*,
193 F.R.D. 46 (D. Conn. 2000)……………………………………………….. 20

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338, 341 (7th Cir. 1997)……………………………………………… 24

*Massey v. On-Site Manager, Inc.*,
11-cv-2612 (E.D.N.Y.)……………………………………………………… 13

*Mautner v. Hirsch*,
831 F. Supp. 1058, 1077 (S.D.N.Y. 1993)……………………………………… 33

*M.G. v. E. Reg. High Sch. Dist.*,
386 Fed. Appx. 186, 188 (3rd Cir. 2010)……………………………………… 8

*Mostead v. Crawford*,
2012 U.S. Dist. LEXIS 128679 (D. Md.)……………………………………… 29

*Murray v. Comm'r of N.Y. Board of Educ.*,
354 F. Supp. 2d 231, 234 (E.D.N.Y. 2005)…………………………………… 3

*New York State Ass'n for Retarded Children, Inc.. v. Carey*,
771 F.2d 1136 (2d Cir. 1983)…………………………………………………… 30

*Passeggio v. Cosmetique, Inc.*,
1999 U.S. Dist. LEXIS 7607 (E.D.N.Y. 1999)………………………………… 20

*Petrolito v. Arrow Financial Services, L.L.C.*,
221 F.R.D. 303 (D. Conn. 2004)……………………………………………… 20

*Pino v. Locascio*,
101 F.3d 235, 237-38 (2d Cir. 1996)…………………………………………… 31

*Pressman v. Estate of Steinvorth*,
886 F. Supp. 365, 367-68 (S.D.N.Y. 1995)…………………………………… 34

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
369 F. Supp. 2d 353 (E.D.N.Y. 2005)………………………………………… 9

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
2006 U.S. Dist. LEXIS 89226 (E.D.N.Y.)…………………………………… 9

*Sanders v. Jackson*,
209 F.3d 998 (7th Cir. 2000)…………………………………………………… 14

*Scham v. Dist. Cts. Trying Crim. Cases*,
148 F.3d 554 (5th Cir. 1998)……………………………………………………….. 7

*Schwartz v. Jones*,
297 N.Y.S.2d 275 (Ct. App. 1969)………………………………………………… 8

*Sebrow v. Fulton, Friedman & Gullace*,
10-cv-05897…………………………………………………………………………... 9

*Separ v. Nassau County Dep't of Social Services*,
327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004)……………………………………… 31

*Shannon v. Fireman's Fund Ins. Co.*,
156 F. Supp. 2d 279, 301 (S.D.N.Y. 2000)………………………………………... 33

*Sonmore v. Checkrite Recovery Servs. Inc.*,
206 F.R.D. 257 (D. Minn.2001)……………………………………………………… 21

*Sparkman v. Zwicker & Associates, P.C.*,
374 F. Supp. 2d 293, 299 (E.D.N.Y. 2005)………………………………………… 32

*Tito v. Rubin & Rothman, LLC and Keith Rothman*,
12-cv-03464 (E.D.N.Y.)…………………………………………………………….. 4

*Toussie v. County of Suffolk*,
2012 U.S. Dist. LEXIS 127143 (E.D.N.Y.)………………………………………… 7

*Vishipco Line v. Charles Schwab Co.*,
2003 U.S. Dist. LEXIS 6820 (S.D.N.Y.)…………………………………………… 33

*Weiss v. Regal Collections*,
385 F.3d 337, 342 (3rd Cir. 2004)………………………………………………... 31

*Wenig v. Messerli & Kramer, P.A.*,
2013 U.S. Dist. LEXIS 39013 (D. Minn.)…………………………………………… 25

*Williams v. Hanover Housing Authority*,
113 F.3d 1294, 1301 (1st Cir. 1997). …………………………………………….. 7

*Williams v. New York City Hous. Auth.*,
975 F. Supp. 317, 326-27 (S.D.N.Y. 1997)………………………………………… 11

*Williamsburg Fair Housing Comm. v. Ross-Rodney Housing Corp.*,
599 F. Supp. 509, 518 (S.DN.Y. 1984)……………………………………………… 11

*Wilner v. OSI*,
201 F.R.D. 3231, 324 (S.D.N.Y. 2001)……………………………………………………..   4


## STATUTES AND OTHER AUTHORITIES

New York Judiciary Law sec. 487……………………………………………………..   3

Fed. R. Civ. P. 23………………………………………………………………..   20

Fed. R. Civ. P. 23(a)(2)…………………………………………………………   26

Fed. R. Civ. P. 23(a)(3)…………………………………………………………   26

Fed. R. Civ. P. 23(b)(3)…………………………………………………………   9

15 U.S.C. sec. 1692k(a)(2)(B)(ii)………………………………………………   17

*Williston on  Contracts* (4th ed.), § 63:3……………………………………………   18

## I.   PRELIMINARY STATEMENT

The herein Memorandum of Law is submitted in opposition to the Plaintiff's motion for attorney's fees and costs (hereinafter "PMAFC") which constitutes an improper attempt to obtain unjustified fees. The Plaintiff intentionally overstaffed this case which is, and has always been, a simple class action commenced pursuant to the Fair Debt Collection Practices Act ("FDCPA").

The time records submitted by the Plaintiff's counsels raise serious questions of overbilling and fee churning. The Plaintiff's fee motion is a patently baseless attempt to have the Court believe that it required *five (5) attorneys*, one of whom is a Harvard Law graduate, one of whom is a Yale Law graduate with over forty years attorney experience, and one of whom has almost forty three years attorney experience with professional credentials reaching the moon, and who together have been practicing law for a collective *ninety eight* (*98) years*, over *three hundred* (*300) hours* to litigate a basically straight-forward FDCPA class action lawsuit with limited activity.

Importantly, the Court must remain cognizant that the parties reached a Class Settlement Agreement ("CSA") early in this litigation which provided attorney's fees for Plaintiff's counsels of no more than $35,000.00. The original CSA, similar to the CSA which was ultimately negotiated, concerned only claims for statutory damages. There was no declaratory judgment, no actual damages, no treble damages and no injunction as pled in the Complaint. Importantly, the claims for violation of New York Judiciary Law § 487 ("the 487 claim") have been expressly withdrawn.

Importantly, in regard to statutory damages, the FDCPA caps class relief at the lesser of $500,000.00 or 1% of the net worth of a debt collector. The Defendant Rubin & Rothman, LLC

1

("R&R") agreed to pay the full 1% of its net worth to the class. The Defendants also paid an additional $5,000.00 in consideration for a limited release to Capital One Auto Finance ("COAF"), the creditor on whose behalf the Defendant R&R was acting when it filed the lawsuit against the Plaintiff which forms the basis of the herein action. The Defendant Keith Rothman contributed an additional $10,000.00 in regard to the claim that the lesser of 1% of his personal net worth or $500,000.00 should also be added to the net worth of the Defendant R&R despite the fact that there no FDCPA class precedent developed over almost 40 years of FDCPA litigation which holds that the net worth of any person who may control the practices of a debt collector should be added to the net worth of the debt collector in an FDCPA class action.

After executing the original CSA the Defendants realized that they were mistaken as to the number of class members. However, any increase in the number of class members was inconsequential as the Defendant R&R had already agreed to pay the maximum 1% of its net worth. Importantly, the increase in class members was only slight in comparison to the typical FDCPA class settlement, which usually includes multiple thousands of consumers. However, instead of simply agreeing to accept the higher number of class members, the Plaintiff and her counsels unjustifiably demanded additional thousands of dollars for the class without any explanation or legal justification despite the fact that the Defendant R&R had already agreed to pay the full 1% of its net worth. Despite numerous attempts by the undersigned counsel to convince Plaintiff's counsels that their demand for additional monies was baseless and legally without merit, the Plaintiff and her counsels refused to budge. They then advised the Court that they could not honor the CSA, thus causing unnecessary additional litigation activity which Defendants were compelled to pursue in an attempt to protect against the improper actions invoked by the Plaintiff and her counsels.

2

## II.   ARGUMENT

### A.  THE PLAINTIFF'S COUNSELS
### INFLATED THEIR FEES

Attorneys must exercise "billing judgment" in regard to fee petitions in that they must act as they would under the ethical and market restraints that constrain a private sector's attorney's behavior in billing their own clients. In the private sector "billing judgment" is an important component in fee setting.  **Hours that are not properly billed to a client also are not properly billed to one's adversary pursuant to statutory authority**. *Defilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985); *Murray v. Comm'r of N.Y. Board of Educ.*, 354 F. Supp. 2d 231, 234 (E.D.N.Y. 2005). Counsel for a prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from a fee petition. *Labarbera v. J.E.T. Res. Inc.*, 396 F. Supp. 2d 346, 351 (E.D.N.Y. 2005). Indeed, the United States Supreme Court has mandated that attorneys submit an honest fee petition when seeking fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)(stating "Counsels for a prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.").

Representations made in attorney fee petitions are serious matters. Inflated time records are subject to potential serious ramifications. *Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994)(finding that billing records submitted in a fee petition were "eyebrow raising." and stating that fee determinations require a "conscientious and detailed inquiry into the validity of the representations that a certain number of hours were useful and were reasonably expended.") In *Laster v. Cole*, 2000 U.S. Dist. LEXIS 8672 (E.D.N.Y.) District Judge John Gleeson of the

Eastern District directed an attorney to show cause why he should not be sanctioned for inflating his time records by a mere three (3) hours in an FDCPA matter. In referring to the three hours of inflated billing, District Judge Gleeson stated "In light of this admitted falsification I wonder whether the time estimate for other tasks are not similarly inflated." (footnote 1 therein).

District Judge Colleen McMahon of this Court, after considering time sheets submitted in another FDCPA matter, stated (referring to the *Laster* matter) "It does not appear that Mr. Fishbein has learned his lesson. Should plaintiff prevail, counsel would be well-advised to review his time sheets before resubmitting them to the Court." *Wilner v. OSI*, 201 F.R.D. 323, 324 (S.D.N.Y. 2001).

A similar situation exists based upon the time records submitted by the Plaintiff. Attorney James Fishman seeks payment for 3.8 hours committed to the notice to the class. His time records set forth that, on 6/08/12, he allegedly committed 3.50 hours to "prepare notice." Mr. Fishman also drafted the class notice in the matter of *Tito v. Rubin & Rothman, LLC et al.* 11-cv-3464 (E.D.N.Y.). The *Tito* matter is a class action, filed by these same attorneys, based upon virtually the same facts and upon the same legal claims as are set forth in the herein action. A copy of the *Tito* class notice is attached as Exhibit "A" to the affirmation of Robert L. Arleo submitted herewith. Most of the notice is standard language. Thus, it could not have possibly required 3.50 hours for an experienced litigator to draft the class notice. 3.50 hours would be proper had Mr. Fishman drafted the notice from scratch. This fact raises serious questions as to whether Mr. Fishman billed similar to Mr. Fishbein in the *Laster* matter.

This Court has again recently demonstrated that its Justices can recognize fee churning. *Barile v. Allied Interstate, Inc.*, 2013 U.S. Dist. LEXIS 32483 (S.D.N.Y.)(finding that plaintiff's attorneys rushed to "churn fees" in FDCPA case after receiving an Fed. R. Civ. P. 68 offer of

judgment); *Goser v. Allied Interstate, LLC*, 2013 U.S. Dist. LEXIS 78097 (S.D.N.Y)(refusing to award fees in an FDCPA case which were excessive and unreasonable after receipt of Rule 68 offer of judgment).

It is clear that Plaintiff's counsels grossly failed to exercise proper "billing judgment". This Court must ponder whether these attorneys acted under the ethical and market restraints that constrain a private sector's attorneys' behavior in billing their own clients.  It is unfathomable that the hours for which Plaintiff's counsels seek compensation could be properly billed to a client. Therefore, the hours cannot be properly billed to the herein Defendants pursuant to the statutory authority for awarding attorneys fees as same is set forth in the FDCPA.

It is important to note the disparity between the amount which the Plaintiff's counsels billed in regard to a motion to vacate a default judgment in the state court lawsuit, upon which the Plaintiff  bases her allegations in the herein action, and the amount of fees which these counsels now seek in conjunction with the herein action. The Plaintiff's counsels billed a flat fee of $1,500.00 for services rendered in attempting to vacate the state court lawsuit. A copy of the time records in regard to the state court lawsuit are attached as Exhibit "B" to the affirmation of Robert L. Arleo submitted herewith. This represents a fee that is properly billed to a client. In contrast, the Defendants assert that the Plaintiff's counsels would not have dared to bill the Plaintiff the amount of fees which they now seek to bill the Defendants herein.

It is clear that counsels for the Plaintiff failed to make a good-faith effort to exclude from their fee request hours that are excessive, redundant or otherwise unnecessary. A lawyer in private practice would be obligated not to submit such a fee petition to a client. Representations made in the Plaintiff's fee petition are serious matters. These inflated time records are subject to potential serious ramifications. The Plaintiff's billing records are eyebrow raising. A

conscientious and detailed inquiry into the validity of the representations that most of hours were useful and were reasonably expended by the Plaintiff's counsels can only result in a flat "no."

This Court should direct Plaintiff's attorneys to appear and explain the motion for attorney's fees submitted in the herein action. The Court should especially ask attorney Peter T. Lane how much of the 7.6 hours he allegedly worked on 1/11/2013 were devoted to "overseeing and reviewing" the work of a law clerk (as if five attorneys of record are not enough, the Plaintiff's counsels want the Defendants to pay for the training provided to a law clerk.) This Court should further direct attorney James Fishman to explain how he billed 3.80 hours on 6/08/12 in regard to "prepare notice". This Court should grill Plaintiff's counsels as to why they sought fit to bill a total of approximately thirty (30) hours in regard to a boilerplate CSA and a total of approximately eighty four (84) hours in regard to the opposition to the Defendants' motion for judgment on the pleadings when no oral argument was held and when Defendants withdrew the motion before a decision was rendered in regard thereto. It is patently outrageous for the Plaintiff's counsels to ask this Court to believe that it would require one attorney to work almost a full week cutting, pasting and tweaking a boilerplate CSA and over two weeks of full time work to review a motion for judgment on the pleadings, research law and draft an opposition thereto. These representations are especially outrageous when considering the legal pedigree, legal experience and all-star legal credentials possessed by the Plaintiff's counsels.

This Court should further compel attorney Fishman to explain how he billed over four (4) hours in regard to alleged conversations with the Plaintiff when the Plaintiff's retained the Schlanger firm solely and when Mr. Fishman did not file a notice of appearance in the above-entitled action until over four (4) months after the Complaint was filed. Indeed, the Schlanger firm billed less time than Fishman in regard to conversations with their client. Notwithstanding,

the Court should be very leery in regard to why an attorney with over thirty (30) years of practice

experience and all-star credentials does not know that it is improper to fail to set forth the

topic(s) of the conversations he allegedly had with a client in order to obtain payment for hours

allegedly work in regard thereto.


    B.  THE COURT SHOULD
        <u>DENY FEES ENTIRELY</u>


    The events which have occurred during the course of this litigation, the filing of a separate

class action alleging virtually identical claims for the sole purpose of churning additional

attorneys' fees and damages, the overstaffing of five attorneys and the grossly and intolerably

exaggerated fees motion filed by the Plaintiff's counsels warrant a total denial of attorneys' fees

herein. Indeed, special circumstances warranting a full denial of attorneys' fees exist if there is a

showing of "outrageous" or "inexcusable" conduct by a plaintiff (or a plaintiff's counsels) during

the litigation of a case. *Williams v. Hanover Housing Authority*, 113 F.3d 1294, 1301 (1st Cir.

1997).

    Courts have consistently refused to award attorneys' fees based upon a finding that the fee

petition was inflated, without basis, fraudulent or otherwise submitted in bad faith in conjunction

with statutes which award attorneys' fees. *Toussie v. County of Suffolk*, 2012 U.S. Dist. LEXIS

127143 (E.D.N.Y.)(denying attorneys' fees entirely based upon finding the fee application

"….so outrageous and unreasonable that it could not have possibly been made in good faith." );

*Fair Hous. Council v. Landow*, 999 F.2d 92, 93 (4th Cir. 1993)(reversing an award of attorneys'

fees and remanding to the district court with instructions to deny fee request in its entirety as the

fee petition was "so outrageously excessive as to shock the conscience of the court."); *Scham v.*

*Dist. Cts. Trying Crim. Cases*, 148 F.3d 554, 557-58 (5th Cir. 1998)(upholding denial of an "outrageous" request for fees); *M.G. v. E. Reg. High Sch. Dist.*, 386 Fed. Appx. 186, 188 (3rd Cir. 2010)(affirming full denial of attorneys' fees and finding the fee request was "…..not only excessive but also either grossly negligent or fraudulent." The District Court therein compared the fee request to a violation of Fed. R. Civ. P. 11).

Filing an outrageous request for attorneys' fees constitutes an abuse of process. *Budget Rent-A-Car Sys. v. Consol. Equity, LLC*, 428 F.3d 717, 718 (7th Cir. 2005)("When an award of fees is permissive, denial is an appropriate sanction for requesting an award that is not merely excessive, but so exorbitant as to constitute an abuse of process of the court asked to make the award.") Intentionally inflating a fee request constitutes a violation of legal ethics. *Chen v Chen Qualified Settlement Fund*, 552 F.3d 218, 225 (2d Cir. 2009)(affirming a full denial of attorneys' fees and citing New York Disciplinary Rules which provide that a lawyer should not charge an illegal or excessive fee.) When an attorney is denied a fee request the authorities speak of it as a penalty visited upon him for misconduct. *Schwartz v. Jones*, 297 N.Y.S.2d 275, 276 (Ct. App. 1969).

Seeking excessive fees for work on one particular motion should result in a full denial of fees. *First State Ins. Group v. Nationwide Mut. Inc. Co.*, 402 F.3d 43 (1st Cir. 2005)(Fees in the amount of sixty thousand dollars ($60,000.00) sought for work on a motion totaling thirty four (34) pages (moving brief and reply to opposition) and attending a short oral argument in regard thereto. District court determined the request was so excessive as to merit an outright denial of fees. First Circuit affirmed stating "Litigation may be expensive but this bill is excessive by more than a small margin----or so the district court could reasonably conclude.") Here, Plaintiff's counsels seek a total of $30,525.00 for allegedly committing approximately eighty four (84)

hours in regard to Defendants' motion for judgment on the pleadings. It is simply unfathomable that a single attorney would have required over two full working weeks reviewing a motion for judgment on the pleadings, researching and drafting a memorandum of law in opposition thereto. In contrast the undersigned counsel committed approximately twenty nine (29) hours to opposing a motion to dismiss a second amended complaint in *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353 (E.D.N.Y. 2005). This time included reviewing a reply thereto and appearing in the Eastern District for oral argument.

This Court should compare the fees sought in the herein matter to the $50,000.00 fees obtained by the undersigned counsel in the *Reade-Alvarez* matter. The amended complaint therein alleged similar claims of no meaningful attorney review in regard to attempts to collect debts. There were 45,000 class members in *Reade-Alvarez* to whom direct mail notice of a similar Fed. R. Civ. P. 23(b)(3) class settlement was provided. During a period from May, 2004 through December 2006 the undersigned committed 131 hours and 55 minutes of attorney time. Fees in the amount of $50,000.00 were paid (pursuant to the settlement agreement). The undersigned counsel's hourly rate was approved at $420.00. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226 (E.D.N.Y.). The case was contested at the outset with a motion to dismiss the amended complaint filed by the Defendants early in the litigation. Importantly, the undersigned counsel litigated the case entirely alone. Thus, the use of five (5) attorneys of record by the Plaintiff in the above-entitled action, with a collective practice experience of ninety eight (98) years, is patently outrageous.

This Court should also compare the fees sought in the herein action to the matter of *Sebrow v. Fulton, Friedman & Gullace, LLC*, 10-cv-5897 (E.D.N.Y.). Said FDCPA class action also alleged similar claims of no meaningful attorney review of summons' and complaints filed in

9

various New York State Courts. In contrast to the above-entitled action the Plaintiff therein served numerous discovery demands which resulted in the need for motions to compel the Defendants to respond thereto. Importantly, the undersigned counsel traveled to Uniondale, Long Island to attend the deposition of the Plaintiff, traveled to Baltimore, Maryland to conduct the deposition of one individual Defendant, traveled to Rochester, New York and conducted the deposition of four (4) other additional individual Defendants and conducted the deposition of the other individual Defendant in New York City via video conference.

In contrast to the *Sebrow* case the Plaintiff's counsels did not serve *any* discovery demands nor did they conduct *any* depositions as the Defendants in the above-entitled action never involved a scorched-earth defense. The parties in *Sebrow* ultimately agreed upon a similar Fed. R. Civ. P. 23(b)(3) class settlement agreement wherein total attorneys fees to Plaintiff's counsels is approximately ninety thousand dollars ($90,000.00). The fact that there are four (4) attorneys of record in the *Sebrow* matter is inconsequential as the undersigned alone conducted all but one of the depositions. The San Diego attorney appeared for the sole purpose of conducted a live deposition of one of the individual Defendants in the State of Arizona.

Hours spent by an attorney appearing in court or at a deposition can be verified and reviewed. In contrast, hours spent reviewing records, talking to other lawyers, preparing legal documents, etc. cannot be verified. Thus, a court is required to trust a lawyer's assertions that the hours claimed represent necessary work which was actually performed. However, depending on a particular situation, a lawyer may have pressing economic incentive to spend too many hours on a particular legal task or to exaggerate the number of hours committed or the need for the work or the importance of the work. *Coulter v. State of Tennessee*, 805 F.3d 146, 150 (6th Cir. 1986). Without admitting that the court appearances by attorney Fishman were even required, the hours

spent by Fishman and Schlanger appearing in court can be verified and reviewed by this Court. However, the hours Plaintiff's attorneys allegedly spent reviewing records, talking to each other, preparing the CSA, tweaking the CSA, opposing the Defendants' motion for judgment on the pleadings, speaking with the Plaintiff etc. cannot be verified. Thus, this Court is required to trust the Plaintiff's attorneys' assertions that the hours claimed represent necessary work which was actually performed. Based upon the time records submitted by the Plaintiffs' attorneys this Court simply cannot trust these submissions. Thus, this Court must consider the possibility that the Plaintiffs' lawyers may have pressing economic incentive to spend too many hours on the CSA, the opposition to the motion for judgment on the pleadings and conversing with the Plaintiff or to exaggerate the number of hours committed to these tasks.

There have been numerous instances of both outrageous and inexcusable behavior engaged in by the Plaintiff and her counsels during the course of litigation of the above-entitled action. Four examples of same will be examined in turn.

1. <u>Intentional overstaffing</u>- The overstaffing of attorneys in this basic FDCPA class action was done solely to improperly churn attorneys fees. The billing records submitted by the Plaintiff's counsels demonstrate that one attorney, and at most two attorneys, could have easily handled the litigation tasks which were required in this lawsuit.

A project may be overstaffed, thus producing duplicative entries. However, the use of more than one attorney is reasonable in complex class action litigation where "each attorney made a distinct contribution by his presence or participation." *Williams v. New York City Hous. Auth.*, 975 F. Supp. 317, 326-27 (S.D.N.Y. 1997). However, it is proper to reduce a fee request when two or more attorneys have duplicated each other's work. In this scenario the duplicated work is unnecessary and, therefore, is deemed "unreasonable". *Williamsburg Fair Housing Comm. v.*

11

*Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 518 (S.DN.Y. 1984); *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004) (reducing attorney award for an attorney whose work primarily "appears to consist of conferrals with co-counsels and reviewing and offering editorial comments on the work of others.")

   The billing records submitted by the Plaintiff evidence that this project was incredibly overstaffed, thus producing consistent duplicative entries. The breadth of these duplicative efforts do not justify a simple reduction of fees but, rather, a full denial of fees. More than one attorney is reasonable in complex class action litigation, which does not describe the herein straight forward FDCPA class action. Importantly, none of the Plaintiff's attorneys made any distinct contributions by his or her presence or participation in the litigation of the herein action. Same is demonstrated by the following facts:

     i.   Four attorneys allegedly performed work on the initial CSA (prior to the initial modification which included COAF), a mostly boilerplate cut-and-paste document for a combined total of *fourteen and one half (14.5)* hours. Indeed almost *two working* days (for a single attorney) committed to a "cut-and-paste", recycled CSA;

     ii.   After agreeing to add COAF to the CSA the Plaintiff's counsels then billed a combined additional *fifteen and one half (15.5)* hours in conjunction with the CSA. This amount of hours is patently outrageous when considering that the addition of COAF to the CSA constituted one paragraph and otherwise had a de minimis effect upon several other paragraphs in the CSA.

12

In fact, much of this CSA document is standard, run-of-the-mill verbatim assertions which are standard to each CSA negotiated by Plaintiff's counsels and which otherwise do not need any modification whatsoever. Thus, none of the four attorneys who allegedly worked on the CSA at issue herein contributed any separate and/or distinct contribution thereto. It patently insults the intelligence of the Court for the Plaintiff's counsels to allege that it required four brilliant, experienced attorneys, with a combined practice experience totaling ninety three (93) years, *thirty (30) hours* to modify a boilerplate CSA and minimally tweak same after the parties agreed to the limited inclusion of COAF. Recycling the boilerplate CSA should have taken one attorney no more than four (4) hours tops.

Proof that the CSA is a recycled boilerplate document used in other class actions filed by Plaintiff's counsels is set forth in the CSA submitted in the matter of *Massey v. On-Site Manager, Inc.* 11-cv-2612 (E.D.N.Y.). This case is referenced in the affidavit submitted by attorney James Fishman in support of the Plaintiff's motion for fees and costs (Dkt. No. 40, page 3, paragraph 11.) The *Massey* case was commenced pursuant to the Fair Credit Reporting Act ("FCRA") and a CSA was ultimately negotiated therein. A copy of the *Massey* CSA is attached as Exhibit "C" to the affirmation of Robert L. Arleo submitted herewith.

The CSA used in the *Tito* matter is also from the exact same template as the CSA used in the herein action. A copy of the *Tito* CSA is attached as Exhibit "D" to the affirmation of Robert L. Arleo submitted herewith. This Court should compel the Plaintiff's attorneys to appear and answer questions in regard to the hours claimed relevant to the CSA.

Another instance of overstaffing of attorneys concerns the motion for judgment on the pleadings which was filed by the Defendants after the Plaintiff improperly failed to honor the

13

initial CSA. This Court should simply not believe that eighty four (84) hours was committed to this motion.

2. <u>The refusal to accept the additional class members</u>- The CSA concerns settlement of the FDCPA statutory damages only. This limitation in regard to the settlement is proven by the fact that the Plaintiff's recovery in the CSA is limited to $1,000.00 which represents the maximum FDCPA statutory damages which an individual can obtain pursuant to the FDCPA. The CSA provides for an additional $1,500.00 for the Plaintiff but this amount is solely related to the Plaintiff acting as a class representative. The additional $1,500.00 is not designed to compensate the Plaintiff for any of the damages which she alleged in her Complaint. Also, the members of the class are limited to a maximum $1,000.00 pro rata share of the class settlement funds.

The reason for the FDCPA class recovery cap is easily understood. The FDCPA's net worth mandate is meant to address the problem of penalizing smaller collection agencies too harshly and to sufficiently hold accountable larger collection agencies. Therefore, by making the extent of the class recovery directly proportional to a percentage of a debt collector's net worth, Congress intended that the accountability be meted out in accord with the ability of a debt collector to absorb the penalty of class statutory damages. Thus, the class net worth provision is not meant to be punitive in nature but recognition by Congress that an award of statutory damages in a class action may exceed a company's ability to pay and thereby force it into bankruptcy. *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000). The primary purpose of a net worth provision is to protect a debt collector against having to liquidate in order to satisfy a class action judgment. *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975)(stating

that the identical net worth provision set forth in the Truth In Lending Act was designed to protect business from a catastrophic damages award.)

The Defendants made it perfectly clear to the Plaintiff's counsels that the claims advanced for violation of the § 487 are patently without merit and that there would be absolutely no monies contributed to the class settlement agreement in regard to the 487 claim. This fact is evidenced by the inclusion of an express withdrawal of the 487 claim in the CSA for which Plaintiff now seeks fees and costs. Had the CSA not been negotiated then the Defendants intended to fully defend against the 487 claim. Importantly, the Defendants steadfastly refused to agree to any stipulated injunction. The Plaintiff attempted to include a stipulated injunction in the original CSA but the Defendants summarily rejected same. Importantly, the Plaintiff also failed to obtain the declaratory relief she sought, the actual damages she sought and the treble damages she sought. Thus, the CSA is, and has always been, a straightforward FDCPA statutory damages class settlement agreement.

The Plaintiff has alleged that the net worth of the Defendant Keith Rothman should be aggregate into the class recovery. However, the Defendant Rothman contends that there is no FDCPA case precedent for holding that the net worth of persons who are alleged to be personally liable for violations of the FDCPA should be aggregated to the net worth of the debt collector who communicated with the consumer. The Defendant Rothman is aware of FDCPA case law which holds that persons who control the policy and practices of a debt collector may be personally liable for FDCPA violations resulting therefrom. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C. supra*. However, the Defendant Rothman contends that such cases limit personal liability to the extent of the debt collector's liability only. In regard thereto, the Defendant Rothman contends that a consumer may seek to obtain monetary damages from a person who

15

controls policies and practices which have been adjudicated against a debt collector only when the consumer is unsuccessful in collecting the adjudged monetary damages from the debt collector. Importantly, the Defendant Rothman argues that there is no FDCPA case precedent which stands for the premise that the net worth of all individuals who control violate practices and policies is to be aggregated and added to the net worth of the debt collector entity which communicated with the consumer.

Based upon the facts set forth in the preceding paragraph the Defendants were fully prepared to litigate in regard to the Plaintiff's claim that the net worth of the Defendant Keith Rothman should be aggregated and added to the net worth of the Defendant R&R. However, in the interest of saving defense costs in regard thereto, the Defendant Rothman agreed to contribute $10,000.00 to the class settlement. Importantly, the CSA, paragraph D-5 therein, states "Defendants in no way admit that the FDCPA requires or allows Rothman's net worth to be aggregated with R&R's net worth for the purpose of calculating the maximum amount of statutory damages in a class case."

The Defendants also agreed to pay an additional $5,000.00 to the settlement in exchange for the limited release to COAF. Thus, the additional $15,000.00 paid to the settlement was designed to buy peace, save defense costs, affect a class settlement agreement and ensure that the Plaintiff would not separately pursue the Defendant's client for damages based upon the same allegations alleged in the Plaintiff's Complaint. This $15,000.00 additional monetary consideration is, as confirmed by the CSA, *separate and distinct* from the agreement to pay 1% of the net worth of the Defendant R&R to the class.

The Defendants originally estimated the class to comprise four hundred twenty two (422) class members. However, after executing the initial CSA, the Defendants determined the amount

16

to be one thousand six hundred twenty five (1,625) class members. As the settlement was always clearly understood to cover FDCPA class statutory damages only pursuant to the class statutory recovery limitations set forth in the FDCPA, this mistake in the number of class members should have been irrelevant. Nothing in the statutory class recovery damages limitations contemplates the size of the class as a factor. Thus, the Plaintiff's should have simply accepted the mistake in the number of class members and honored the original CSA. Instead, the Plaintiff and her counsels attempted to unjustifiably exploit the mistake in class number to bludgeon additional thousands of dollars from the Defendants representing unjustified additional relief to the class.

In response to the Defendants advisement that they made an unintentional mistake in regard to the number of class members Plaintiff counsel, Daniel Schlanger, sent a letter dated July 31, 2012, to Judge Ramos. A copy of said letter is attached as Exhibit "E" to the affirmation of Robert L. Arleo submitted herewith . Initially, the letter confirms Mr. Schlanger's understanding that the class monetary relief is relevant only to the Defendant R&R.. Therein he states "(1) Were the settlement to move forward, R&R would be released from 4 times as many potential claims as previously contemplated in return for the same payment to the class." This argument has no merit. Pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii) statutory damages recoverable by a class in an FDCPA class action is limited to "……such amount as the Court may allow for all other class members, *without regard to a minimum individual recovery* (italics added), not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." Thus, due to the limitations upon class recovery in the FDCPA, it is irrelevant that R&R would "…. be released from 4 times as many potential claims as previously contemplated in return for the same payment to the class." as alleged by Mr. Schlanger in his letter to Judge Ramos. This argument is patently frivolous in that the number of class members is not determinative of the cap upon

FDCPA class statutory damages. The Defendant R&R had already agreed to pay the full 1% of its net worth. The increase in the number of class members did not legally require the Defendant R&R to pay more money as demanded by this Plaintiff and her attorneys.

In his correspondence to Judge Ramos Mr. Schlanger further complained "In any event, verification of a class size of approximately 422 was a condition of settlement and it is now clear that the Defendant cannot and will not meet that condition." However, this argument fails as the class size constituted, at best, an immaterial term of the settlement agreement. The immateriality of the class size condition is based upon the FDCPA monetary class recovery limits.

In regard to the fact that the class size condition is an immaterial . Courts will not deem a contract to be breached unless the breach results to a "material" part of the contract. *Williston on Contracts* (4th ed.), § 63:3 states (in part):

> "if a breach is relatively minor and not of the essence, the plaintiff is still bound by the contract and may not abandon performance and obtain damages for a total breach by the defendant, though the nonbreaching party is entitled to damages caused even by the immaterial breach, albeit that these may be nominal in amount. Otherwise stated, a non-performing party is liable for any breach of contract, but the other party is discharged from further performance, and is entitled to substantial damages, only when there is a material breach…….."

Only a material breach of contract allows an injured party to seek rescission of the contract. An immaterial breach of contract, at best, results in only the measure of nominal damages to return the party to the same position that it would have been had the immaterial breach not occurred. *Jim Beam Brands Co. v. Tequila Cuervo La Rojena S.A. DE C.V.*, (Sup. Ct. N.Y. County 2011)(attached as Exhibit "F" to the Affirmation of Robert L. Arleo submitted herewith).

In his correspondence dated July 31, 2012 to Judge Ramos, Mr. Schlanger complains that the increase in number of class members reduces the amount of money which each class member would receive from approximately $94.79.00 to $24.62.00. Again, the statutory damages recoverable by a class in an FDCPA class action is limited to "……..such amount as the Court may allow for all other class members, *without regard to a minimum individual recovery* (italics added), not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." Therefore, Mr. Schlanger's complaint that the change in class members would affect the minimum monetary amount which each class member would receive is belied by the very language of that portion of the FDCPA which deals with the recovery of statutory damages in class actions.

The folly of Plaintiff's argument that the recovery of individual class members would be reduced to $24.62 is belied by the fact that these same counsels entered into a CSA in regard to the similar *Tito* action. Pursuant thereto, the maximum each class member could receive if each class member filed a claim form is $37.13. Notwithstanding, the Plaintiff's counsels are well aware that nowhere near the entire class will file a claim form. Thus, in all likelihood, each class member filing a claim form in regard to initial CSA will receive at least $94.79, which puts the Plaintiff back to the position she would have been if the class size was as originally as represented by the Defendants despite the increase in class members.

Mr. Schlanger's argument, set forth on the next to last paragraph on page 2 of his July 31, 2012 letter to Judge Ramos, i.e. that the "…..Plaintiff could not proceed with a settlement absent additional relief to the class." is without merit and further evidence of the bad faith which the Plaintiff and her counsels have exhibited during the course of litigation herein. The unintentional miscalculation of the number of class members was not a material breach and did not provide a

basis for the Plaintiff to refuse to honor the class settlement agreement "...absent additional relief to the class." At best, the Plaintiff was entitled to nominal damages only to place her in the position she would have been had the number of class members been correctly calculated by the Defendants. However, the miscalculation did not disrupt the position where the Plaintiff would be absent the miscalculation as to the number of class members, i.e. she still would recover the full 1% of the net worth of the Defendant R&R.

The increase in class members also did not place the CSA at risk of not obtaining an order of final approval. The FDCPA statutory cap on damages often results in too little money for too many class members to render a distribution of any monies to class members. However, this "de minimis recovery" scenario has not prevented federal courts from granting class certification in FDCPA class actions. The FDCPA statutory damages cap has often resulted in class actions certified despite no monetary award to any class member. In these cases, the amount recovered based upon the cap is simply insufficient to warrant individual distribution based upon the number of class members. This "de minimis recovery" does not prevent a court from issuing a final order of certification pursuant to Fed. R. Civ. P. 23. Thus, it did not matter how much each class member could obtain. Therefore, Mr. Schlanger's complaining in regard to the alleged reduced amount of money each class member would receive in no way jeopardized the chance for the CSA to gain approval.

There is substantial decisional authority from District Courts in New York, and other states, supporting the premise that de minimis class recovery does not bar class certification. *Labatte-D'Alauro v. GC Serv. Ltd. P'shp*, 168 F.R.D. 451 (E.D.N.Y. 1996); *Kalish v. Karp & Kalamotousakis, L.L.P.*, 246 F.R.D. 461 (S.D.N.Y 2007); *Passeggio v. Cosmetique, Inc.*, 1999 U.S. Dist. LEXIS 7607 (E.D.N.Y. 1999); *Berrios v. Sprint Corp.*, 1998 U.S. Dist. LEXIS 6579

(E.D.N.Y.); *Petrolito v. Arrow Financial Services, L.L.C.*, 221 F.R.D. 303 (D. Conn. 2004); *Macarz v Transworld Systems, Inc.*, 193 F.R.D. 46 (D. Conn. 2000). Each one of these foregoing decisions rejected the argument, advanced by the respective debt collector defendants therein, that *de minimis* recovery by each class member did not render class certification proper.

For perhaps the best analysis as to why alleged de minimus recovery should not bar class certification the Court herein is respectfully asked to review the analysis by now Chief District Court Judge Loretta A. Preska set forth in *Kalish v. Karp & Kalamotousakis, L.L.P.*, *supra*. For those minority courts which may invoke the de minmis recovery arguments to deny class certification, the Court herein is respectfully referred to *Leyse v. Corporate Collection Servs., Inc.*, 2006 U.S. Dist. LEXIS 67719 (S.D.N.Y.)(certification denied for failure to establish numerosity, de minimis recovery comment in footnote only *and* expressly distinguished by Judge Preska in *Kalish*); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D Minn. 2003); *Sonmore v. Checkrite Recovery Servs. Inc.*, 206 F.R.D. 257 (D. Minn. 2001); *Lyles v. Rosenfeld Attorney Network*, 2000 U.S. Dist. LEXIS 8543 (D. Miss.); *Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 92 (W.D. Mich. 2002).

The contents of Mr. Schlanger's correspondence to Judge Ramos sets forth two other alleged "key results" of the increase in class members.  First, Schlanger alleges that the Defendant R&R would be released from "…4 times as many claims as previously contemplated in return for the same payment to the class." This argument is also refuted by the fact that the Defendant R&R had agreed to pay the full 1% of its net worth to the class. The full 1% is designed to release the claims of all members of the class. Thus, the Defendant R&R was not receiving any additional benefit in regard to the increased number of class members. The Defendant R&R had already

agreed to purchase the release of the claims of *all* class members regardless of the number of class members. The purchase price was 1% of the net with of the Defendant R&R.

Finally, Mr. Schlanger complains that the increased number of class members will heighten the number of objectors at the fairness hearing. Again, the potential for objectors is irrelevant when a debt collector pays the full 1% of its net worth. Notwithstanding, FDCPA class actions usually concern much more than 1,600 class members. Otherwise, the possibility of objectors is assumed by a Plaintiff in any class action settlement.

Importantly, the Plaintiff's improper refusal to honor the CSA after being advised by the Defendants that the class size was miscalculated compelled the Defendants to file the motion for judgment on the pleadings in an attempt to finally fight off the greedy Plaintiff and their greedy counsels.

3.   The filing of a separate class action based upon virtually the same claims-

The Plaintiff's counsels have a demonstrated propensity to abuse the FDCPA in order to churn attorneys fee. Filing the *Tito v. Rubin & Rothman, LLC and Keith Rothman* matter demonstrates this propensity. A copy of the Complaint filed in the Tito action is attached as Exhibit "G" to the affirmation of Robert L. Arleo submitted herewith. Instead of naming a state-wide class of all persons who were named as a defendant in lawsuits filed by the Defendant R&R wherein the complaints contained the identical claims of violation of the FDCPA and 487, the Plaintiff's counsels filed two different FDCPA class action lawsuits by splitting the class amongst the specific creditor on whose behalf the Defendant R&R filed lawsuits pursuant to delinquent automobile loans. The creditor in *Tito* is TD Auto Finance, LLC and the creditor in the herein action is COAF.

A portion of the website maintained by Schlanger & Schlanger describes the *Tito* lawsuit in detail.  A copy of that portion of Schlanger & Schlanger website is attached as Exhibit "H" to the affirmation of Robert L. Arleo submitted herewith. However, a close reading of the Schlanger & Schlanger posting indicates that even Plaintiff's counsels cannot distinguish the herein action from the *Tito* action. Although the heading of the posting references to lawsuits filed by the Defendant R&R on behalf of COAF the explanation following immediately thereunder refers to the *Tito* lawsuit. Therein, the *Tito* lawsuit is improperly set forth on the Schlanger & Schlanger website as pending in the "(SDNY)". Following a description of the *Tito* lawsuit, the following statement is set forth on the website maintained by Schlanger & Schlanger.  "A very similar case involving Rubin & Rothman's statements in court documents filed on behalf of Capital One Auto Finance, LLC was filed earlier this year and is also pending."

Further evidence of improper and unnecessary fee churning is evidenced by the date upon which James Fishman filed a notice of appearance in the *Tito* action. The *Tito* action was filed on July 13, 2012. Mr. Fishman filed his Notice of Appearance on March 21, 2013, shortly *after* the parties agreed to a class settlement. There was absolutely no need for Mr. Fishman to file a notice of appearance in the *Tito* matter. Importantly, the CSA in the *Tito* matter is the same "cut-and-paste" version of the CSA in the herein action. Indeed, the only reason for Mr. Fishman's appearance in the *Tito* matter is so that he may "wet his beak" in regard to the fees which may be awarded therein. In fact, Mr. Fishman did not file a notice of appearance in the above entitled action until over four (4) months after the Complaint was filed (although his billing records commenced on 3/14/2012).

There was absolutely no reason for the filing of two separate FDCPA class action lawsuits based upon (as described on the Schlanger & Schlanger website) "very similar" claims other than

to churn unnecessary attorneys fees and exploit the FDCPA statutory class recovery provision. The filing of the two class actions, based upon different creditors, is further evidence that the Plaintiff's counsels are using the FDCPA as a vehicle to obtain unwarranted attorneys fees.

  The Defendants acknowledge that there is no requirement to name the broadest class possible in an FDCPA class action. *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 341 (7th Cir. 1997)(rejecting defense argument in FDCPA class action that a national class should be named instead of a state-wide class.); *Labatte-D'Alauro v. GC Services Ltd. Partnership, supra* (same.) However, there is nothing in the FDCPA which can be read to encourage the filing of multiple serial class actions, based upon the same alleged FDCPA violations against the same debt collector, by dividing the classes based upon the creditor for whom the debt collector was representing.

  In *Guevarra v. Progressive Fin. Serv.,* 497 F. Supp. 2d 1090 (N.D. Ca. 2007), District Judge Vaughn R. Walker of the Northern District of California provided an excellent analysis of the potential for abuse of the FDCPA class action provision. The plaintiff in *Guevarra* had originally filed an FDCPA class action lawsuit against a debt collector based upon a class consisting of all consumers who had received the same debt collection letter. However, the plaintiff then amended the complaint to seek relief for herself and a class of recipients of the letter who were indebted to one particular creditor. Plaintiff's counsel advised the court that he had conferred with another plaintiff's counsel on a separate identical action concerning the same letter and agreed with the other attorney to divide the class by creditor.

  Judge Walker stated that the attorneys had agreed to divide the class actions by creditor solely to maximum attorneys without any significant benefit to the class. The Plaintiff's attorneys attempted to rely upon the holding in *Mace v. Van Ru Credit Services* regarding the "no

requirement to name the broadest possible class." Mandate. Although recognizing the "no broadest class" concept, Judge Walker nonetheless went on to analyze the problem with the net worth provisions of the FDCPA and found that the class recovery limitations "…..encourages multiplication of proceedings." He further stated that this "..mis-incentive created by the FDCPA" stands in direct conflict with 28 U.S.C. sec. 1927 (prohibiting vexatious multiplication of proceedings.)

The Court in *Wenig v. Messerli & Kramer, P.A.*, 2013 U.S. Dist. LEXIS 39013 (D. Minn.) recently expanded the analysis regarding improperly filing serial class actions for the same FDCPA alleged violations by splitting the cases by creditor. In denying a motion for class certification based upon a smaller class limited by creditor the court therein stated:

> "The limitations on the proposed class makes little sense; it would be as logical to limit the class to Minnesota consumers whose last name starts with "R" or to Minnesota consumers who own cats."

The Court then stated that the debt collector sent 30,000 of the subject letters, containing the exact same alleged FDCPA violation, to consumers in Minnesota who owed debts to various creditors and that the "…most natural class…" would include the entire 30,000 Minnesota residents. In fact, the Plaintiff had originally named that class but thereafter revised the class by creditor. The Court further stated:

> "The reason for (plaintiff's) late "gerrymandering" of the class definition may be found in 15 U.S.C. § 1692k(a)(2)(B) which limits class recovery……..
> Thus, if the most natural class was certified- a class of about 30,000 consumers….
> (defendant) would pay a total of $30,000 and each consumer would recover only about $1. By turning one natural class into numerous unnatural classes (plaintiff's) attorneys are attempting to evade the damages cap……, force the (defendant) to pay more than the FDCPA envisions, and increase the amount of each consumer's recovery."

In direct comparison the Plaintiff's counsels have filed the above-entitled action and the *Tito*

action to evade the damages cap, force the herein Defendants to pay more than the FDCPA envisions and increase the amount of each consumer's recovery.

Narrowing of the class contravenes one of the main purposes of class action litigation which is the avoidance of the multiplicity of litigation. *Crown v. Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 Sup. Ct. 2392 (1983). The principal function of a class action lawsuit is to avoid the multiplicity of litigation activity where a class action is found to be "superior to other methods for the fair and efficient adjudication of the controversy." *Am. Pipe & Construct. Co.*, 414 U.S. 538, 551 (1974)(quoting Rule 23(b)(3). By filing two separate lawsuits based upon the virtual identical claims the Plaintiff's counsels have frustrated the purpose of the FDCPA class action provision and the intent behind Fed. R. Civ. P. 23.

Nor would the additional claim alleged in the above-entitled action defeat class certification if the two Complaints were filed as one class action. The only difference between the Complaint in the above-entitled action and the *Tito* action is the claim in the above-entitled action regarding the COAF Affidavit of Merit as set forth in paragraph 30 of the Plaintiff's Complaint. In determining whether a plaintiff can show that the claims of class members share common questions of law or fact, Fed. R. Civ. P. 23(a)(2) does not require that all questions of law or fact raised be common to all members of the class. The critical inquiry is whether the common questions law at the core of a cause of action alleged are shared by the class members.

Typicality, as required by Fed. R. Civ. P. 23(a)(3), is satisfied when each class member's claims arise from the same course of events and each class member makes similar legal arguments. A simple review of both Complaints reveals that there are common questions that lay at the core of each action. Furthermore, the claims of each of the members of the classes arise from the same course of events and each Complaint alleges the exact same legal arguments.

Thus, both the above-entitled action and the *Tito* action could have been consolidated into one lawsuit.

    4.   <u>The attempt to mislead the Court regarding possible double-billing</u>-

   The Plaintiff was represented in the underlying state court action by Schlanger & Schlanger in the attempt to vacate a default judgment entered against the Plaintiff. In order to determine if there was the potential for the payment of double fees in conjunction with the fees motion submitted in the above-entitled action the undersigned counsel submitted a correspondence dated May 17, 2013 to Magistrate Judge Yanthis. Therein the undersigned counsel requested that the Plaintiff produce the retainer agreement and billing records related to the state court action. In response thereto attorney Daniel Schlanger submitted a correspondence dated May 20, 2013 addressed to Magistrate Judge Yanthis. In an attempt to diffuse any issue of the potential attempt to double-bill for work done by law firm, he stated (in part):

> "Moreover, in the context of a fee application for over $123,000 of work performed over an 18 month period, the amount of time in which the cases overlap is *de minimus*. Specifically, the instant case was filed on 12/28/12 (actually 12/28/11) and the stipulation of vacatur and dismissal of the State Court action was signed by counsel for all parties on 1/5/2012. Thus, the vast and overwhelming majority of work in the instant case occurred <u>after</u> vacatur and dismissal of the State Court collection defense action had been obtained."

   Mr. Schlanger misrepresented the facts. The time sheets submitted in conjunction with the herein action demonstrates that billing commenced on 11/14/2011. The billing in the state court matter commenced on 11/28/2011.  A simple comparison of both billing records for entries set forth until 1/5/2012 indicates a clear cross-over of issues between both cases. For example, the state court records reference affidavits for the Plaintiff and her husband and for "research". The billing records for the herein action reference to "affidavits in case" by Mr. Schlanger on

11/28/2011 and to "more research on (legal issue)" by Mr. Schlanger on 11/29/2011. Thus, Mr. Schlanger attempted to mislead this Court when he referenced to the commencement date of the above-entitled action. In fact, both cases were being worked at the same time by the Schlanger firm. Any of the alleged work performed in the herein action could have been related to and used in the state court action. Plaintiff's counsels should be compelled to appear and explain why there is no issue of attempted double-billing.

The requests for fees submitted by the Plaintiff is so intolerably inflated that this Court should deny fees entirely. In *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980), the United States Court of Appeals for the Seventh Circuit affirmed a total denial of fees by the District Court stating:

> "Appellant's counsel submitted a claim which was so intolerably inflated that the district court was warranted in departing from the usual practice and reacting vigorously to prevent such abuse of the court's authority to award reasonable compensation to counsel….If, as Appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of fees to which they should have asked for in the first place."

As demonstrated heretofore herein the Plaintiff's counsels submitted a claim for fees which is so intolerably inflated that this Court would be absolutely warranted from departing from the usual practice of awarding reasonable compensation to counsel. If this Court were required to award a reasonable fee to the Plaintiff's counsels after they filed their outrageously unreasonable motion for fees, then the Plaintiff's attorneys would be encouraged to continue to make unreasonable fee demands, knowing that the only unfavorable consequence of such misconduct would the reduction of fees to which they should have asked for in the first place.

An entitlement to an award of attorneys fees is not a *carte blanche* license to outrageously and in bad faith churn attorneys fees without the threat of any sanction. *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003)(denying fees entirely.) Fees should be denied entirely when far-fetched requests for payment are submitted. *Mostead v. Crawford,* 2012 U.S. Dist. LEXIS 128679 (D. Md.).

While denying fees entirely is "strong medicine", denying fees is appropriate when counsels engage in "inexcusable reaching for fees—to the detriment of the court. A request for fees is required to be in good faith and in reasonable compliance with judicial pronouncement, and is not an opening gambit in negotiations to reach an ultimate result" *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991). Defendants recognize that denying Plaintiff attorneys fees would be strong medicine. However, Plaintiff's counsels have clearly engaged in inexcusable reaching for fees to the detriment of this Court. Clearly, the Plaintiff's counsels considered their fee petition to be an opening gambit in negotiations to reach an ultimate result of being awarded fees herein.

The Defendants anticipate that the Plaintiffs will continue their mantra that the undersigned counsel has engaged in delay tactics as exemplified by the correspondence dated April 17, 2013 from attorney Schlanger to District Judge Ramos. A copy of said correspondence is attached as Exhibit "I" to the affirmation of Robert L. Arleo submitted herewith. Yet no baselessly alleged "…long and sordid history of delay and frivolous conduct……", as set forth in the second paragraph of said April 17th letter,  can excuse the outrageous allegations of  time committed to the CSA, the opposition to the motion for judgment on the pleadings or the drafting of the class notice by Mr. Fishman. Notwithstanding, and as set forth above, any delay in resolution of the herein action was caused *directly* by the Plaintiff and her counsels in refusing to accept the

increase in class members in conjunction with the statutory class recovery restrictions set forth in the FDCPA.


C.  IF THE COURT DOES NOT DENY
    FEES ENTIRELY THEN THE FEES
    SHOULD BE DRASTICALLY REDUCED

A party seeking attorneys fees has the burden of demonstrating the reasonableness and necessity of the hours allegedly committed. A court must use conscientious and detailed inquiry into the validity of representations that a certain number of hours were reasonably and usefully expended. *New York State Ass'n for Retarded Children, Inc.. v. Carey,* 771 F.2d 1136 (2d Cir. 1983). In reviewing fee applications a district court should exclude hours that were not reasonably expended. *Hensley v. Eckerhart, supra*. If the court determines that any hours are excessive, redundant or otherwise unnecessary, the court should exclude those hours from the fee petition. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). A court may exclude any unreasonable hours from a fee request by making across-the-board reductions in the amount of hours claimed. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

The Plaintiff 's counsels have the burden of demonstrating the reasonableness and necessity of the hours allegedly committed as set forth in the submitted time records. If this Court uses conscientious and detailed inquiry into the validity of representations by Plaintiff's counsels that a certain number of hours were reasonably and usefully expended then, at an absolute minimum, a drastic reduction in fees should be effected. This Court must exclude the myriad of hours that were not reasonably expended by the Plaintiff's counsels. This Court can easily determine that most of the alleged hours are excessive, redundant and were otherwise unnecessary and,

30

therefore, exclude those hours from the fee petition. This Court should exclude all of the unreasonable hours from the Plaintiff's fee request by making a severe across-the-board reduction in the amount of hours claimed by the Plaintiff's counsels.

A court must use its experience with the practice of law to assess the reasonableness of hours spent on a particular case. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). The Defendants are extremely comforted to know that both the District Court Judge and the Magistrate Judge assigned to the above-entitled action have vast experience with the practice of law. The Defendants are confident that, when this vast experience is invoked to assess the reasonableness of the hours allegedly spent on this particular case by the Plaintiffs counsel, the outright unreasonableness of the hours will be crystal clear to the Court and the decision in regard to the fees issue will reflect same.

The most critical factor in a district court's determination of what constitutes reasonable attorneys' fees is the degree of success obtained by the Plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 119, 113 S.Ct. 566 (1992); *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005); *Pino v. Locascio*, 101 F.3d 235, 237-38 (2d Cir. 1996). The assessment of success is determined by the quality of relief obtained compared to that which plaintiff sought to achieve as evidenced by the allegations in her complaint. This comparison promotes the courts central responsibility to make the assessment of that which constitutes a reasonable fee. *Barfield v. N.Y. City Health & Hospital Corp.*, 537 F. 3d 132 (2d Cir. 2008). In determining a proper fee reduction for not succeeding on all claims, the court may attempt to identify and subtract those hours spent litigating unsuccessful claims or it can simply reduce the award to account for the limited success. *Separ v. Nassau County Dep't of Social Services*, 327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004).

31

Perhaps the most valuable relief which the Plaintiff could have obtained would have been a stipulated injunction. Indeed, the vast majority of courts have held that injunctive relief is not available under the FDCPA. *Weiss v. Regal Collections,* 385 F.3d 337, 342 (3rd Cir. 2004); *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 2d 293, 299 (E.D.N.Y. 2005). Thus, compelling a debt collector to agree to an injunction to correct the alleged violative conduct is strong support for an award of attorneys.  Indeed, the Plaintiff sought such an injunction but the Defendants refused to agree to this request.

The value of obtaining stipulated injunctive relief in an FDCPA class settlement agreement, and the support injunctive relief provides for a claim for attorneys' fees, was recognized by this Court in the matter of *Foti v. NCO Financial Systems, Inc.*, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y.). Therein District Judge Richard Sullivan stated "The Court finds that the agreed upon amount of fees is reasonable in light of the value of the injunction obtained." 2008 U.S. Dist. LEXIS 16511*20-21. The Second Circuit Court of Appeals has subsequently commented upon the use of "going-forward" injunctive relief in an FDCPA class settlement agreement. *Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012).

If this Court does not deny fees entirely then the most critical factor in this district court's determination of what constitutes reasonable attorneys' fees in this action is the degree of success obtained by the Plaintiff. The Court is directed to the allegations in Plaintiff's Complaint and is asked to compare that which Plaintiff alleged and that which Plaintiff ultimately obtained. Although Plaintiff sought statutory damages, actual damages, treble damages, declaratory relief and an injunction, the Plaintiff was able to only obtain statutory relief pursuant to the FDCPA. This comparison promotes this Court's central responsibility to make the assessment of that which constitutes a reasonable fee for the Plaintiff's counsels. In determining a proper fee

reduction for not succeeding on all claims, this Court should simply drastically reduce the award to account for the extremely limited success achieved by the Plaintiff.

The experience and credentials of an attorney are valuable factors for a court to use to determine if hours committed to a litigation were reasonable. *Finkel v. Omega Common Servs.*, 543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008)(50% reduction upon fees requested finding that many submissions were boilerplate, no novel or particularly difficult issue of law were implicated, many entries lacked sufficient detail and Plaintiff's counsels routinely worked on ERISA cases which further bolstered the finding that the expenditures were unreasonable.)  Here, the Plaintiff's counsels trumpet their collective vast litigation and legal lecture touring experience. These credentials are valuable factors for this Court to use to determine that the vast majority of the hours alleged to have been committed to this litigation were patently unreasonable. Again, many of the submission were boilerplate, there was no novel or particularly difficult issue of law implicated, most of the entries on the Plaintiff's counsels billing records lack sufficient detail and the Plaintiff's counsels routinely work on FDCPA and class action cases.

The vagueness of the time records also supports a large across the board fee reduction. The time records submitted are replete with references to "legal research". These entries are too vague for this Court to award the fees requested relevant thereto. *Vishipco Line v. Charles Schwab Co.*, 2003 U.S. Dist. LEXIS 6820 (S.D.N.Y.)(finding that entries such as "legal research" are too vague to allow a court to determine the reasonableness of the time allegedly expended.); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2000)(finding that time entries such as "legal research", which do not indicate the subject matter of the worked performed, "..do not permit a thorough evaluation.").

Many of the other entries are vague, especially entries concerning internal conversations and alleged conversations with the Plaintiff. *Mautner v. Hirsch*, 831 F. Supp. 1058, 1077 (S.D.N.Y. 1993)(denying to awards fees in regard to vague entries such as "Telephone call to S. Berger.", "Review Macklove files.", "Conference with T. Holzman.".) *Levy v. Donald E. Powell*, 2005 U.S. Dist. LEXIS 42180 (E.D.N.Y.)(finding improper "Review correspondence from client." and "Telephone conference with client."); *Daily v. Societe General*, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996)(finding entries such as "Telephone call.", "consultation" and "review of documents" improper.) Entries which do not have legal matter specified should not be awarded. *Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 367-68 (S.D.N.Y. 1995)(denying compensation for entries such as "telephone conversation" "prepare correspondence" or "review of file" where associated legal matter was not specified.)

Experienced counsel should be able to spend less time on work than less experienced counsel. *Husain v. Springer*, 2013 U.S. Dist. LEXIS 37134 (E.D.N.Y.)(reducing fees by stating that counsel spent an inordinate amount of time on the case "…which belied his experience.) A court should reduce the fee award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the result produced. *E.S. v. Katonah- Lewisboro School Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011).  Hours are not reasonably spent if they are excessive, meaning that too much time is devoted to a particular matter, or duplicate, which means the same matters are covered at different times or by more than one attorney. *Gingras v. Lloyd*, 585 F. Supp. 684 (D. Conn. 1983). It is proper to reduce a fee request when two or more attorneys have duplicated each other's work. In this scenario the duplicated work is unnecessary and, therefore, is deemed "unreasonable". *Williamsburg Fair Housing Comm. v. Ross-Rodney Housing Corp.*, *supra*; *In re AMF Bowling Sec. Litig.*, *supra*

34

(reducing attorney award for an attorney whose work primarily "appears to consist of conferrals with co-counsels and reviewing and offering editorial comments on the work of others."). It is proper for this Court to dramatically reduce the Plaintiff's fees request as no less than four attorneys have clearly and unequivocally duplicated each other's work in regard to the first two CSA's negotiated by the parties and in regard to the opposition to the motion for judgment on the pleadings.

A court should ordinarily greet a claim that several lawyers were required to perform a single task with healthy skepticism. *Hart v. Bourgue*, 798 F.2d 519, 523 (1st Cir. 1986). Skepticism should be invoked in regard to claims that several lawyers were needed to perform a task and compensation should be denied for such needless duplicative hours such as three lawyers appearing for a hearing when one would do. *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004).  Plaintiffs simply are not entitled to have any number of attorneys paid for their efforts when fewer attorneys could have accomplished the job. *Ky. Rest. Concepts, Inc. v. Louisville*, 117. Fed. App'x 415, 419 (6th Cir. 2004).

<u>CONCLUSION</u>

For the reasons set forth heretofore the Plaintiff's motion for attorneys' fees and costs should be denied in its entirety.

DATED: New York, New York
      May 31, 2013

                              Respectfully submitted,

                              / s /  *Robert L. Arleo*
                              ROBERT L. ARLEO, ESQ.
                              Attorney for the Defendants
                              380 Lexington Avenue
                              17th Floor
                              New York, New York 10168
                              (212) 551-1115